HESS BROTHERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8039. Promulgated July 26, 1927.

1. Traveling and other necessary expenses incurred by officers of a corporation in carrying on its business are deductible in computing the corporation's taxable income, when such expenses are duly authorized and are shown to have been ordinary and necessary business expenses.

2. The cost of additions and improvements made by a tenant on business property leased for a definite term should be treated as a capital investment and exhausted over the period of the lease or the life of the improvements, whichever is the shorter.

3. The Commissioner correctly reduced surplus by the amount of income and profits tax for the preceding year, prorated from the date payable.

*W. C. Magathan, Esq.*, for the petitioner.
*T. M. Wilkins, Esq.*, for the respondent.

The Commissioner determined deficiencies in income and profits tax as follows:

| | |
|---|---|
| January 31, 1920 | $11,796.62 |
| January 31, 1921 | 3,074.80 |
| January 31, 1922 | 3,716.60 |
| January 31, 1923 | 2,362.20 |
| Total | 20,950.22 |

Petitioner claims errors were committed in reference to the following:

(1) Disallowance of traveling and other ordinary and necessary expenses of officers in carrying on the business of the corporation.

(2) Depreciating the cost of alterations or improvements made on business property leased for a definite period, over estimated life of the improvements instead of over the lesser period, the term of the lease.

(3) Erroneous reduction of invested capital on account of preceding year's tax.

## FINDINGS OF FACT.

Petitioner is a Pennsylvania corporation with its principal office and place of business in Allentown.

During the taxable years in question, the petitioner conducted a general department store, the largest in Allentown. Its sales ranged during the taxable years from about $3,000,000 in 1920 to over $4,000,000 in 1923. The property leased and used by petitioner consisted of a large store building, dimensions about 185 feet front by 230 feet deep, on the main street in Allentown. The building was five stories and basement. In addition to this there were a large stable and lot covering a full half block, a garage, and warehouses.

Max Hess was president of the corporation during 1920, 1921, and during 1922 until his death in February, 1922, at which time he was succeeded by William T. Harris, who thereafter continued to serve as president. Charles Hess was vice president during the taxable years and Solomon Hoffman was secretary. Prior to the death of Max Hess, William T. Harris was treasurer.

During the taxable years the stock of the petitioner was owned as follows:

|  | Shares |
|---|---|
| Max Hess | 1, 575 |
| Charles Hess | 1, 575 |
| William T. Harris | 750 |
| Solomon Hoffman | 750 |
| William Behringer | 250 |
| John Diefenderfer | 150 |
| Kaufman | 100 |
| Sell | 100 |

All of the stockholders were active in the business, either as officers or as assistant managers.

After the death of Max Hess, 575 shares of his stock was owned by his widow and 1,000 shares by his son.

The president of petitioner called weekly, semi-weekly and monthly meetings of the stockholders and directors, when the general conduct of the business was discussed, and corporate business conducted in a rather informal manner. At one of such meetings in the fiscal year 1921, it was proposed that the president and vice president should be paid the amount of $150 per week each for traveling and other expenses incurred by them on business for the corporation and all the stockholders agreed to this.

The total amounts received by Max Hess and Charles Hess, by virtue of the allowance of $150 per week each for traveling and other

necessary expenses incurred by them on business of the corporation, were for the years ended:

| | |
|---|---|
| January 31, 1921 | $12, 450 |
| January 31, 1922 | 15, 600 |
| January 31, 1923 | 15, 050 |

For the year ended January 31, 1920, these officers paid their own expenses without reimbursement.

The president served as general manager of the corporation and superintended all the buying of merchandise for the store. The vice president was the foreign representative of the corporation. He spent about nine months of the year abroad, engaged in buying foreign merchandise and keeping the store in touch with the changes in styles and novelties. The remaining three months of the year he spent at Allentown and in New York and other domestic markets engaged in similar work.

The duties of Max Hess and William T. Harris as president and superintendent, aforesaid, necessitated frequent trips by them to New York, sometimes as many as three trips within a week and they were often compelled to stay in New York all week.

On such trips Max Hess, as president, and subsequently William T. Harris, as president, were expected to pay, and did pay, the expenses of themselves and buyers or other employees accompanying them, and also such expenses for meals, transportation, etc., of salesmen and others with whom they transacted business for the corporation. It was the policy of petitioner that their buyers and other representatives should never accept gratuities or entertainment from the persons with whom they were dealing.

The payments of $150 per week to the president and vice president each were made regularly, beginning April 17, 1920, and were either paid by check or were credited to the personal accounts of such officers on the corporate books. Such officers received no reimbursement for expenses made, as heretofore indicated, other than the $150 weekly, which weekly allowance for such expenses did not fully reimburse them for the amounts actually expended in the corporation's behalf. The expense of maintaining personal automobiles while used in the business of petitioner was a part of the expenses covered by the said $150 weekly allowances. The said automobiles were used on trips to market cities, frequently loaded with buyers and were also used in making deliveries of merchandise for petitioner. They were so used on an average of four days a week on the business of the company.

The business property of petitioner was leased from Max Hess and Charles Hess, aforesaid, by written lease for one year from April 1, 1919, and yearly thereafter, by new written leases, until there was

made in 1922 a lease for ten years from September 1, 1922, to September 1, 1932. The ten-year lease was made to petitioner by Charles Hess and the Lehigh Valley Trust Co., Trustee, which executed the lease by virtue of the trust created by the will of Max Hess, deceased, and by authority granted by the Orphans' Court.

Under the terms of the leases, the petitioner was liable for the cost of improvements and betterments placed on the property by it and the title to such was to vest in the lessors. The leases gave the lessee no unconditional option or right of renewal. There was a clause in each yearly lease providing that if the lessors permitted the tenant to hold over the term, such holding over should be considered a renewal of the lease for one year. There was also a provision in the lease to the effect that the notice to quit required by any act of assembly previous to proceedings to recover possession of the demised premises was waived by the lessee. There was, however, no holding over as a new lease was made each year before the expiration of the existing lease.

The rentals paid were $60,000 for the first one-year lease; $75,000 for the second; $100,000 for the third; and for the ten-year lease, $112,000 per annum.

The cost of alterations or improvements made by petitioner on said leased property in 1920 was $7,633.92 and in 1923, $47,630.79.

The Commissioner capitalized such expenditures and computed the deduction for exhaustion, wear and tear, on these expenditures, at the rate of 4 per cent per annum, based upon the physical life thereof, without regard to the terms of the one-year lease in 1920 and the ten-year lease in 1923.

The petitioner kept its books and made its returns on the accrual basis.

### OPINION.

LITTLETON: The Board is of the opinion that the payments of $150 weekly to each, the president and vice president of the petitioner, during the fiscal years 1921, 1922, and 1923, for traveling and other necessary business expenses while engaged on business of the petitioner, were ordinary and necessary expenses paid or incurred during those years in carrying on petitioner's business and were proper deductions in computing the net income of petitioner.

The total of such payments made in each of the years was as follows:

| | |
|---|---|
| Fiscal year 1921 | $12,450 |
| Fiscal year 1922 | 15,600 |
| Fiscal year 1923 | 15,050 |

The fact that the president and vice president were not required to keep itemized expense accounts is not material, as the evidence

shows that the sums were authorized by the petitioner; were expended by the officers in the carrying on of the business and were, in fact, less than the amounts actually expended by said officers. *Julius Forstmann*, 6 B. T. A. 21.

The petitioner made no such payment for ordinary and necessary expenses to the president and vice president in the fiscal year 1920, nor did it deduct such an amount from its gross income in computing net income. The said payments of $150 per week were not begun until April 17, 1920, and respondent was in error in holding otherwise and increasing petitioner's income in the amount of $15,600 for the fiscal year 1920, on the theory that such amount had been paid and deducted from income.

The respondent also committed error in stating the amount of business expenditures claimed as deductions by petitioner for the year 1921 as $15,600, whereas petitioner expended in payments to its president and vice president for that year the sum of $12,450, and only claimed deduction for that amount.

The petitioner expended $7,633.92 in the fiscal year 1920 and $47,630.79 in the fiscal year 1923 on alterations and improvements made on its business property. At the time $7,633.92 was expended, petitioner had only a one-year lease on the property in question. When the $47,630.79 was expended, petitioner then had a lease covering a period of ten years. Both leases were for definite periods and in neither was there given any option or right of renewal to the lessee.

The expenditures so made were capitalized by respondent and depreciated over a period of 25 years, the estimated useful life of the improvements. The petitioner admits that the expenditures may be properly capitalized, but such cost should be exhausted over the life of the leases and not the life of the improvements.

In view of the fact that the leases were for a definite and fixed period, with no unconditional right or option to renew, the Board is of the opinion that the expenditures for alterations and improvements in the amount of $7,633.92 made during the fiscal year 1920 upon the property occupied under a lease for one year only, are deductible in full in computing the petitioner's net taxable income for the fiscal year 1920.

The Board is further of the opinion that in computing the petitioner's net taxable income for the fiscal year 1923, the correct deduction for depreciation on alterations, additions and improvements made during said fiscal year to the business property mentioned under the lease for ten years, is one-tenth of $47,630.79, the total expenditures for that year, and that the Commissioner was in

error in depreciating the same over the useful life of the property, estimated to be 25 years.

The petitioner's invested capital for the fiscal years 1920, 1921, and 1922 was correctly reduced by the respondent on account of income and profits tax for the preceding year. *Russel Wheel & Foundry Co.*, 3 B. T. A. 1168.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*